**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

```
-----------------------------------------------------------x
In re:                                                     :   Chapter 11
                                                           :   (Small Business Subchapter V)
                                                           :
Augustus Intelligence Inc.,                                :
                                                           :   Case No. 21-10744 (TMH)
                    Debtor.                                 :
                                                           :   Hearing Date:  August 10, 2026 at 10:00 a.m. ET
                                                           :   Objection Deadline:  July 30, 2026 at 4:00 p.m. ET
-----------------------------------------------------------x
```

**TRUSTEE'S MOTION FOR ENTRY OF AN ORDER**
**(I) ISSUING A FINAL DECREE CLOSING THIS CHAPTER 11 CASE, (II)**
**TERMINATING THE CLAIMS AGENT, (III) AUTHORIZING THE DESTRUCTION**
**OF CERTAIN DOCUMENTS, AND (IV) GRANTING RELATED RELIEF**

Brian Ryniker, solely in his capacity as the post-confirmation trustee (the "Trustee" or "Augustus Trustee") of the litigation trust (the "Augustus Trust") of Augustus Intelligence Inc. (the "Debtor"), hereby moves this Court (the "Motion") for the entry of an order, substantially in the form annexed hereto as Exhibit A (the "Proposed Order") (a) issuing a final decree closing this chapter 11 case (the "Chapter 11 Case"), (b) terminating the engagement of the claims agent, (c) authorizing the destruction of the Debtor's remaining business records, and (d) granting related relief.

The Trustee submits that the relief requested herein is appropriate because the Trustee has (a) completed the liquidation of all known Augustus Trust assets of potential value, (b) filed, prosecuted, and, where applicable, resolved or concluded all identified potential Augustus Trust claims and causes of action, and (c) complied with his financial reporting obligations. While the Trustee has been unable to generate sufficient recoveries in this case to satisfy all senior secured and administrative expense claims in full, the Trustee submits that the Augustus Trust has been fully administered and the Plan has been otherwise substantially consummated. At this point, it would serve no useful purpose or benefit any Augustus Trust beneficiaries if the case is converted

to Chapter 7. Consequently, the Trustee submits that the Motion should be granted and the Proposed Order entered.

In support of this Motion, the Trustee respectfully represents as follows:

## JURISDICTION

1.     This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.     The statutory bases for the relief requested in this Motion are sections 105(a), 350(a), 363(b)(1), 554(a)  and 1142 of title 11 of the United States Code (the "Bankruptcy Code") as supplemented by Rules 3022 and 6007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 3022-1 of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

## BACKGROUND

### I.     GENERAL BACKGROUND

#### A.     Nature of the Debtor's Business.

3.     On July 7, 2015, Wolfgang Haupt ("Mr. Haupt") formed Banda Apparel LLC, a Delaware domestic limited liability company, which was renamed to "Augustus Collective LLC" as of November 29, 2016 ("Augustus Collective"). Mr. Haupt served as the managing member of Augustus Collective and originally formed it to act as a holding company to acquire equity positions in small businesses and certain strategic assets.

4.     On June 29, 2018, Debtor Augustus Intelligence Inc. was incorporated in Delaware. That same day, Augustus Collective was merged with and into Augustus (the "Conversion"). By

operation of the Conversion, all assets of Augustus Collective became assets of Augustus by operation of law.

5.     Mr. Haupt was the controlling shareholder of Augustus at the time of the Conversion and served as its Chief Executive Officer and Chairperson of its Board of Directors, until he temporarily stepped down in the summer of 2020 and then formally resigned as CEO in November 2020.

6.     At the time of the Conversion, Mr. Haupt was anticipating raising additional capital for the company through a Series Seed round so he elected to change Collective into a Delaware corporation in order to change the capital structure and issue new common stock.  He also wanted to change Collective's name to Augustus Intelligence in order to be consistent with his stated new focus of developing artificial intelligence software technology to be licensed to U.S. and international commercial businesses operating in a variety of different industries.  Mr. Haupt's stated vision was to build an integrated AI company inclusive of data centers.  Using the "Intelligence" moniker, Mr. Haupt intended to communicate to potential investors that Augustus was embarked on developing a new wave of artificial intelligence software technology that could be licensed to U.S. and international commercial businesses operating in a variety of different industries.

7.     Starting in the mid-2018 through early 2019, Augustus and Mr. Haupt embarked on an ambitious fundraising effort, raising approximately $33.5 million, plus an additional $80 million in subscriptions in capital, from 35-40 private investors at a $250 million pre-money valuation (collectively, the "Seed Investors" and, together with the other stockholders other than Mr. Haupt, the "Investors").  Augustus initially used the funds for operating costs and to hire software and technology engineers, develop technology, and fund research and development.

Augustus developed or acquired, through subsidiary acquisitions, certain patents and patents pending and AI functional bricks in connection with its proprietary technology.  In addition, Augustus closed on two acquisitions of other loss-making companies in the AI industry.

8.      In May-June 2020, certain German newspapers published various negative newspaper articles about Augustus, Mr. Haupt and others, based primarily on claims asserted by certain former  employees.

9.      By the summer of 2020, Augustus had spent more than $30 million of its initial capital raise and a number of Seed Investors began to raise concerns about the actions of management and members of the Board of Directors at the time (the "Old Board") in managing the company.  At that point, Augustus had hit a "burn rate" of approximately $3.7 million a month, with an expanded staff of over 100.  Further, the German press speculated about senior executives' spending excessive amounts on unnecessary corporate expenditures and Augustus's maintaining expensive offices in One World Trade Center, which further fueled Investors' concerns.

10.      In June 2020, Mr. Haupt stepped down from his positions as CEO and Chairman of the Old Board.[1]  In July 2020, several shareholders decided to replace the entire Old Board with three new directors. In November 2020, an additional board member was selected separately by the minority group of  investors to serve as an independent director, thus forming a new Board of Directors (the "New Board").

**B.      Chapter 11 Case**

11.      Since its inception, Augustus Collective and its successor Augustus continuously incurred significant operating losses as it generated little to no revenue while it had significant

---

[1]  In the fall of 2021, Mr. Haupt died in a helicopter crash in Germany.

monthly operating and related expenses.  Augustus suffered from poor governance.  It experienced a number of operational and managerial issues, including an unfocused business model, overly complex financial and corporate structure, weak financial processes, budgeting, spending and controls over compensation, poor integration of acquisitions, the retention of expensive outside advisors and consultants, and a lack of reporting and communication with Investors.  As a result of continued Investor concerns, the New Board engaged prepetition an outside law firm, Armstrong & Teasdale, to conduct an independent investigation into the conduct of Mr. Haupt and prior management and Alix Partners to assist with the forensic accounting aspect of the investigation..  Armstrong & Teasdale's and Alix Partners' reports were issued during the Chapter 11 Case.

12.     After engaging new professionals and evaluating Augustus' deteriorating financial situation, the New Board authorized Augustus to file on April 24, 2021 (the "Petition Date") a voluntary petition for relief under chapter 11 (Subchapter V) of the Bankruptcy Code with the Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

13.     During the Chapter 11 Case, the Bankruptcy Court authorized the Debtor to retain Stretto, Inc. as its claims and noticing agent and as administrative agent.

14.     As of the Petition Date, Augustus had seven non-debtor direct or indirect wholly-owned or majority-owned subsidiaries: Augustus Commerce, LLC ("Commerce"), Union Square Linens LLC, Augustus France, xBrainsoft, xBrainsoft Inc., Arcus Applied Artificial Intelligence GmbH (f/k/a Augustus Intelligence, GmbH) ("GmbH"), and Augustus Italia (collectively, the "Subsidiaries").  All of the Subsidiaries are non-debtors.

15.     An initial goal in the Chapter 11 Case was to reduce operating expenses and then market and sell the Debtor's subsidiaries' few remaining operating businesses.  However, those

efforts ultimately proved only moderately successful.  During the Chapter 11 Case, the Debtor was able to sell GmbH, but only for $75,000.  The Debtor's efforts to sell Commerce ultimately fell through when Commerce's largest customer cancelled its contract in the midst of sale negotiations and Commerce's only potential buyer withdrew its offer.  Augustus France operated for a short period of time until it ran out of funds and then filed for bankruptcy itself in France.  The other Subsidiaries were not operating and any assets that they had were ultimately liquidated, generating additional marginal recoveries.

C.    **The Plan**

16.    On May 3, 2022, the Debtor filed its Small Business Debtor's Revised First Amended Plan of Liquidation [D.I. 213] ("Plan").  The Plan provided for the transfer of all of the Debtor's assets, including estate claims and causes of action, to the Augustus Trust to be pursued by the Trustee for the benefit of the Augustus Trust beneficiaries, including creditors and equity holders.

17.    On July 26, 2022, the Court entered its Findings of Fact, Conclusions of Law, And Order Confirming the Small Business Debtor's Revised First Amended Plan of Liquidation [D.I. 251] (the "Confirmation Order").

18.    The "Effective Date" under the Plan occurred on August 1, 2022.

19.    As of the Effective Date of the Plan, all of the Debtor's Estate Causes of Action and Assets were transferred to the Augustus Trust.[2]  The Trustee was appointed and charged with administering the Augustus Trust, including, among other things, the sale and liquidation of all remaining Debtor's Assets, pursuing potential litigation claims of the Estate against third parties,

---

[2]  Undefined capitalized terms contained herein shall have the meanings ascribed to such terms in the Plan.

and objecting to any disputed Claims or Equity Interests. After the payment of expenses and funding of reserves for the Augustus Trust and payment of the DIP Loan, any proceeds generated from the sale of the Debtor's Assets and net recoveries realized from the pursuit of litigation claims were to be distributed to holders of Allowed Expenses and Claims and Equityholders in accordance the terms of this Plan.

20.     The Plan also contained an option for Holders of Equity Interests to elect to assign to the Augustus Trust any individual claims or causes of action they may have in connection with the purchase of their Equity Interest. The Augustus Trustee could then elect, in the exercise of his business judgment, whether to pursue such Assigned Litigation Claims separately or together with Estate Causes of Action against common defendants.

## D.     The Trustee's Adversary Proceedings

21.     After the Effective Date, the Trustee commenced several adversary proceedings. Since the Augustus Trust had little funding, the adversary proceedings were pursued on a contingency fee or blended contingency fee basis. The adversary proceedings commenced by the Trustee included:

      a.     Adversary Proceeding No. 23-50369 (TMH). Trustee filed an Adversary Complaint against certain former Augustus employees and their counsel asserting preferential transfer and fraudulent conveyance claims under Bankruptcy Code Sections 547, 548 and 550. Following a court-ordered mediation, the claims were settled as to all of the defendants, except one who failed to appear, resulting in a default judgment being entered against him. The Trustee continues to pursue collections efforts against this defaulted defendant.

      b.     Adversary Proceeding No. 23-50368 (TMH). Trustee filed an Adversary Complaint against defendant Augustus Collectives LLC ("Collectives"), an entity formed prepetition by Mr. Haupt and certain Augustus Equityholders. The Trustee alleged that certain investment assets (referred to in the *Complaint* as the Augustus Investment Assets) were acquired with funds from the Debtor or its predecessor and were transferred prepetition for no

consideration to Collectives and/or one or more of the John Doe Defendants, asserting counts seeking, among other things: (i) a declaratory judgment that the Augustus Investment Assets are property of the Debtor and now the Augustus Trust; (ii) avoidance and recovery of the Augustus Investment Assets as constructive fraudulent transfers pursuant to federal and state law; (iii) in the alternative, turnover of the Augustus Investment Assets or the proceeds thereof pursuant to 11 U.S.C. § 542; (iv) an order instructing any defendants with custody, possession, and/or control over any Augustus Investment Assets or the proceeds thereof to immediately turnover same to the Augustus Trust; and (v) a judgment in favor of the Trustee for unjust enrichment against any defendants who received any of the Augustus Investment Assets.

Collectives failed to answer the Complaint and the Trustee filed a motion for a default judgment. After service of the default judgment motion was returned to Trustee's counsel, due to resignation of Augustus Collective's Delaware agent for service of process, the Trustee re-served the motion on the Delaware Secretary of State in accordance with Delaware State law. The re-served motion is expected to be heard by the Bankruptcy Court in July 2026. It is unclear whether the Trustee will be able to recover any further Augustus Investment Assets, beyond those that have already been recovered, but the Trustee continues to pursue collections efforts against Collectives.

c.   Adversary Proceeding No. 23-50370 (TMH).  On April 23, 2023, the Trustee, on behalf of the Augustus Trust and as assignee of the Augustus Investors commenced this adversary proceeding by filing the Complaint. By the Complaint, the Trustee sought, among other things, to enforce the rights and pursue claims of the Augustus Trust against the Defendants for breach of contract, common law fraud, conspiracy to commit fraud, breaches of fiduciary duties and to recover assets of the Augustus Trust and to the extent any such assets were improperly transferred out of Augustus, to avoid such transfer  as an avoidable fraudulent transfer and recover such assets as assets of the Augustus Trust, (ii) an order for turnover, and (iii) a judgment for unjust enrichment against any defendants who wrongfully received any Augustus assets.

Defendant Kevin Washington filed a motion to dismiss the *Complaint* as to him. The motion to dismiss was extensively briefed and the Bankruptcy Court held oral argument. Following oral argument, the Bankruptcy Court (Honorable John T. Dorsey (deceased)) issued a *Memorandum Opinion* and entered an Order granting Mr. Washington's motion to dismiss based primarily on the doctrine of *in pari delecto* and lack of subject matter jurisdiction over the Assigned Litigation Claims.

The remaining Defendants include, among others, various individuals, including investors, former directors or officers of the Debtor, the estate of Mr. Haupt, certain domestic and foreign entities, and various "John Doe" Defendants.  The Trustee undertook to locate and serve these defendants, most of whom reside overseas.  To date, however, only one remaining Defendant has made a limited appearance in this adversary proceeding and, then, for the sole purpose of opposing the Trustee's request for additional time to serve him.

Counsel for the Trustee advised the Trustee that it was not willing to continue to pursue the contingency case on appeal and the Trustee has not been able to locate any other counsel willing to pursue the claims on a contingency basis.  After carefully evaluating the legal hurdles identified by the Court in its Memorandum Opinion, the Trustee, in consultation with the Litigation Trust Oversight Board and in the exercise of his business judgment, has determined that the costs and delay of further litigation outweigh any likely recoveries from the remaining Defendants.  Accordingly, the Trustee intends to dismiss this adversary proceeding with respect to the remaining Defendants contemporaneous with the entry of the Proposed Order.

In the Proposed Order, the Trustee requests that the Assigned Litigation Claims be automatically assigned back to individual assignor Equityholders and that the Trustee be authorized to execute written assignment agreements to evidence the assignment back of the Assigned Litigation Claims, if requested by any assignor Equityholders.

## II.    Business Records

22.    As of the Effective Date, and pursuant to the Plan and the Litigation Trust Agreement, the Debtor transferred all of their Records to the Trustee.  The Trustee's firm, RK Consulting, is currently storing on its servers the Debtor's historical corporate administrative documents, which accounts for over 2TB of data on its system and over 7,500 files.  The cost of storing this data is consumed in the Trustee's Firm's operating cost.  In addition, Thompson Coburn is storing on its system certain of the Debtor's electronic files retrieved in connection with the investigation conducted by the New Board, through Armstrong & Teasdale and Alix Partners (collectively, with the Debtor's records being stored by the Trustee, the "Records").

23.    The Records relate to a wide range of historical business records, including historical e-mail correspondences, bank statements, personnel files, and accounting documents.

24.    The Trustee and Thompson Coburn are currently incurring the cost to maintain the Records.

25.    The Trustee has determined that none of the Records are necessary for administering the Augustus Trust.  Additionally, there may be additional Records belonging to the Debtor which are currently in the possession of third parties such as attorneys, accountants, and other formerly retained professionals.

26.    The Proposed Order provides that the Trustee is authorized, but not directed, to abandon and destroy the Debtor's Records which he, in his sole discretion and business judgment, deems to be no longer necessary to the administration of the Augustus Trust, at such time as the Trustee determines appropriate, pursuant to sections 105(a), 363(b)(1) and 554(a) of the Bankruptcy Code.

### RELIEF REQUESTED

27.    By this Motion, the Trustee requests, pursuant to Bankruptcy Code Sections 105(a), 350(a), 363(b)(1) 554(a), and 1142, Bankruptcy Rules 3022 and 6007 and Local Rule 3022-1, the entry of an order the Proposed Order, (a) issuing a final decree closing this chapter 11 case, (b) terminating the engagement of the claims agent, (c) authorizing the destruction of the Debtor's remaining business records , and (d) granting related relief.

### BASIS FOR RELIEF REQUESTED

### A.  Final Decree Closing the Chapter 11 Case

28.    Section 350(a) of the Bankruptcy Code provides that "[a]fter an estate is fully administered and the court has discharged the trustee, the court shall close the case."  11 U.S.C.

§ 350(a). Further, Section 105(a) of the Bankruptcy Code provides, in relevant part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

29. Bankruptcy Rule 3022 governs the closing of chapter 11 cases and further provides that "[a]fter the estate is fully administered in a Chapter 11 case, the court must, on its own or on a party in interest's motion, enter a final decree closing the case." FED. R. BANKR. P. 3022; *see* Del. Bankr. L. R. 3022-1(a).[3]

30. Neither the Bankruptcy Code nor the Bankruptcy Rules define the term "fully administered." The Advisory Committee Notes to Bankruptcy Rule 3022, however, set forth the following non-exclusive factors to be considered in determining whether a case has been fully administered:

a. whether the order confirming the plan has become final;

b. whether deposits required by the plan have been distributed;

c. whether the property proposed by the plan to be transferred has been transferred;

d. whether the debtor or the successor of the debtor under the plan has assumed the business or the management of the property dealt with by the plan;

e. whether payments under the plan have commenced; and

f. whether all motions, contested matters, and adversary proceedings have been finally resolved.

---

[3] With respect to 28 U.S.C. § 1930, the Trustee avers that this is a Subchapter V case and, therefore, no quarterly fees are due or owed.

*See* Fed. R. Bank. P. 3022, Advisory Committee Notes (1991).[4]

31.     Courts have recognized that "these factors are but a guide in determining whether a case has been fully administered, and not all factors need to be present before the case is closed." *In re SLI, Inc.*, No. 02-12608, 2005 Bankr. LEXIS 1322, at * 5 (Bankr. D. Del. June 24, 2005). Rather, "Bankruptcy Rule 3022 is intended to allow bankruptcy courts flexibility in determining whether an estate is fully administered." *In re Union Home & Indus., Inc.*, 375 B.R. 912, 916 (10th Cir. B.A.P. 2007) (citation omitted); se*e also In re Kliegl Bros. Universal Elec. Stage Lighting Co., Inc.*, 238 B.R. 531, 542 (Bankr. E.D.N.Y. 1999) (recognizing that bankruptcy courts weigh the factors contained in the Advisory Committee Notes when deciding whether to close a case); *In re Omega Optical, Inc.*, 476 B.R. 157, 166-167 (Bankr. E.D. Pa. 2012) (same); *Walnut Assocs. v. Saidel*, 164 B.R 487, 493 (E.D. Pa. 1994) ("[A]ll of the factors in the Committee Note need not be present before the Court will enter a final decree.") (*quoting In re Mold Makers, Inc.*, 124 B.R. 766, 768-69 (Bankr. N.D. Ill. 1990)).  Each request to close a chapter 11 case is reviewed by a bankruptcy court on a case-by-case basis considering all relevant factors, including the factors identified in the Advisory Committee Notes to Bankruptcy Rule 3022. *See Spierer v. Federated Dep't. Stores, Inc. (In re Federated Dep't. Stores, Inc.)*, 43 Fed. Appx. 820, 822 (6th Cir. 2002).

32.     As set forth below, the current circumstances of this Chapter 11 Case and an analysis of the factors enumerated in the Advisory Committee Notes to Bankruptcy Rule 3022 demonstrate the appropriateness of the Court entering a final decree closing this Chapter 11 Case.

33.     Most of the factors enumerated in the Advisory Committee Notes to Bankruptcy Rule 3022 have been substantially satisfied and weigh in favor of closing this case.   The

---

[4]  The Advisory Committee Notes also state that "[e]ntry of a final decree closing a chapter 11 case should not be delayed solely because the payments required by the plan have not been completed."

Confirmation Order is final and non-appealable.  Pursuant to the Confirmation Order, the Plan, and the Litigation Trust Agreement, the Trustee has liquidated the Augustus Trust assets as required by the Plan.  The Trustee has also pursued to conclusion all known Augustus claims and causes of action.  Further, other than the instant Motion and the pending Collectives Default Judgment Motion, which should be finalized before the scheduled hearing on this Motion, all motions, contested matters, and adversary proceedings in this Chapter 11 Case has been fully resolved.  Accordingly, the Trustee submits that this Chapter 11 Case may be closed and that the closing of this Chapter 11 Case will not prejudice any creditor of the Debtor.

34.      In addition to the factors set forth in the Advisory Committee Notes, courts have also considered whether the plan of reorganization  has been substantially consummated. *See In re Motors Liquidation Company*, 625 B.R. 605, 615 (Bankr. S.D.N.Y. 2021); *see also Walnut Assocs*., 164 B.R at 493. The Bankruptcy Code defines the term "substantial consummation" as:

a.      transfer of all or substantially all of the property proposed by the plan to be transferred;

b.      assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and

c.      commencement of distribution under the plan.

11 U.S.C. § 1101(2).

35.      Courts have found that a case is still "substantially consummated" and ripe for entry of a final decree even where distributions have not been completed and minor issues remain to be heard or resolved.  *See, e.g., In re Wade*, 991 F.2d 402, 407 n. 2 (7th Cir. 1992) ("section 1102 states that substantial consummation is reached when, inter alia, distribution has commenced, but not necessarily been completed") (emphasis in original); *In re JMP-Newcor Int'l. Inc*., 252 B.R. 462, 465 (Bankr. N.D.Ill. 1998) (holding that case was fully administered even though certain

disbursements under the plan were yet to be made and an adversary proceeding remained pending); *In re Jay Bee Enters., Inc.*, 207 B.R. 536, 539 (Bankr. E.D. Ky. 1997) (holding that there is no "require[ment] that a chapter 11 case be kept open until all awarded fees and allowed claims have been paid in accordance with the confirmed plan or until the statutory fees here involved have been paid"); *Walnut Associates. v. Saidel (In re Walnut Assocs.)*, 164 B.R. 487, 493 (E.D. Pa. 1994) (holding chapter 11 case was fully administered because the plan was substantially consummated upon the sale of the debtor's largest asset).

36.     As discussed above, substantially all the estate's assets were transferred to the Trust to hold in trust for the Trust beneficiaries and have been sold or liquidated, with any recoveries distributed in accordance with the terms of the Plan and the Litigation Trust Agreement. Accordingly, the Plan has been substantially consummated under section 1101(2) of the Bankruptcy Code.

37.     While the Trustee has been unable to generate sufficient recoveries in this case to satisfy all senior secured and administrative expense claims in full, the Trustee submits that the Augustus Trust has been fully administered and the Plan has been otherwise substantially consummated. At this point, the Trustee submits that it would serve no useful purpose or benefit any Augustus Trust beneficiaries if the case is converted to Chapter 7.

38.     Based on the foregoing, the Trustee submits that it is appropriate and necessary for the entry of a final decree closing this Chapter 11 Case.

**B.   Termination of Engagement of Claims Agent**

39.     On June 1, 2021, the Bankruptcy Court entered an order authorizing the Debtor to Employ and Debtor to Retain and Appoint Stretto (the "Claims Agent") as Claims and Noticing

Agent Effective as of the Petition Date [D.I. 67]. The Claims Agent was retained to, among other things, maintain a database of all claims filed against the Debtor.

40.    The Trustee submits that upon issues of the final decree, the termination of the Claims Agent's engagement as claims and noticing agent is appropriate under the circumstances. The Trustee requests that the Claims Agent be directed to comply with the instructions and guidelines set forth by the Clerk's Office with respect to procedures for preparation of a final claims register in accordance with the provisions of Local Rule 2002-1(e)(ix).

C.  **Abandonment of Assets that are Burdensome or of Inconsequential Value to the Estate and Authority to Sell Residual Assets**

41.    The abandonment by the Trustee of assets that are burdensome or of inconsequential value to the Trust and its beneficiaries is also governed by Sections 554(a) and 363 of the Bankruptcy Code. *See infra* ¶¶ 44-47.

42.    The Trustee anticipates that there may be certain unknown or unliquidated *de minimis* assets remaining in or discovered by the Trust following the distribution and wind down of the Trust which are burdensome or of inconsequential value to the Trust and its beneficiaries (the "Residual Assets").

43.    To complete the wind-down of the Debtor's estate and administration of the Trust, the Trustee seeks authority to sell or abandon any Residual Assets which the Trustee determines, in his business judgment, to be burdensome or of limited value to the Trust and its beneficiaries, without the need to re-open the Chapter 11 Case or further order of the Court and respectfully submits that such relief is appropriate under Sections 105(a), 363(b)(1) and 554(a) of the Bankruptcy Code.

### D. **Destruction of Records**

44.     Section 554 of the Bankruptcy Code provides, in relevant part, that "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a). Further, section 363 of the Bankruptcy Code permits a trustee to "use, sell, or lease other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  Additionally, section 105 of the Bankruptcy Code provides, in relevant part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  The purpose of section 105(a) of the Bankruptcy Code is "to assure the bankruptcy court's power to take whatever action is appropriate or necessary in aid of the exercise of their jurisdiction." 2 COLLIER ON BANKRUPTCY ¶ 105.01 (Alan N. Resnick & Henry J. Sommers eds., 16th ed.).  This is consistent with the broad equitable authority of the bankruptcy court. *See, e.g., In re Continental Airlines,* 203 F.3d 203, 211 (3d Cir. 2000) ("Section 105(a) of the Bankruptcy Code supplements courts' specifically enumerated bankruptcy powers by authorizing orders necessary or appropriate to carry out provisions of the bankruptcy code.").  Further, the "trustee's power to abandon property is discretionary and the court will generally defer to the trustee's judgment in determining whether to abandon a property." *In re Syntax-Brillian Corp.*, 2018 WL 3491758, *15 (Bankr. D. Del. July 18, 2018) (citing *In re Moore*, No. 15-10174, 2015 WL 5674430, *9 (Bankr. D. N.J. Sept. 25, 2015).

45.     The destruction or other disposal of the approximately 2.5 TB of Records currently maintained by the Trustee and his counsel for which the Trustee is requesting authorization herein to abandon and destroy or otherwise dispose of is also governed by Bankruptcy Rule 6007(a), which provides, in pertinent part, as follows:

Notice by the Trustee or Debtor in Possession.

(1)   *In General.* Unless the court orders otherwise, the trustee or debtor in possession must give notice of a proposed abandonment or disposition of property to:

- all creditors;

- all indenture trustees;

- any committees appointed or elected under the Code; and

- the United States trustee.

(2) *Objection.* A party in interest may file and serve an objection within 14 days after the notice is mailed or within the time set by the court. If a timely objection is filed, the court must set a hearing on notice to the United States trustee and other entities as the court orders.

Fed. R. Bankr. P. 6007(a).

46.    "The abandonment power embodied in Section 554 enables the trustee to rid the estate of burdensome or worthless assets, and so speeds the administration of the estate … and also protects the estate from diminution. In such manner, abandonment serves the creditors' interest in expeditiously obtaining a fair amount on settlement of their claims." In re Quanta Resources Corp., 739 F.2d 912, 916 (3d Cir. 1984).

47.    Courts have authorized debtors to destroy books and records in other cases where such books and records were burdensome or of inconsequential value to the estate. *See, e.g., Adelphia Hosp. Corp. v. N.Y. Dep't of Health (In re Adelphia Hosp. Corp.)*, 579 F.2d 726 (2d Cir. 1978) (permitting the trustee of a debtor hospital to dispose of patients' medical records, even though applicable regulations required hospitals to maintain, store, and service those records for at least six years); *In re PubliCARD, Inc.*, Case No. 07-11517 (RDD) (Bankr. S.D.N.Y. Jan. 30, 2008) [Docket No. 86] (order authorizing reorganized debtor's destruction of certain personnel

accounting, and payroll records, among other items); *In re ProCare Auto. Sys. Solutions, LLC*, Case No. 06-10605 (PEMC) (Bankr. N.D. Ohio June 8, 2007) [Docket No. 979] (order authorizing Trustee's destruction of certain obsolete records); *In re Texfi Indus. Inc.*, Case No. 00-10603 (AJG) (Bankr. S.D.N.Y. Mar. 30, 2007) [Docket Nos. 778, 784] (order authorizing chapter 11 trustee's destruction of, among other things, personnel files for all former employees); *In re Xpedior Inc.*, 354 B.R. 210, 221 (Bankr. N.D. Ill. 2006) (authorizing plan trustee to destroy all books and records because, among other things, "there exist[ed] no business purpose for retaining the Debtor's books and records."); *Syntax-Brillian.*, 2018 WL 3491758 at *15 (authorizing plan trustee to destroy records when the trustee "weighted the costs and bene-fits of retaining he records against their usefulness" and devised a plan to destroy records that was "in the best interest of the [t]rust and its beneficiaries.").

48.    The Trustee's abandonment of the Records is warranted under section 554(a) of the Bankruptcy Code, and their destruction (including the incurrence of costs associated with destruction) is permitted under section 363 of the Bankruptcy Code.   Given that the Records provide no benefit to the administration of the Trust, the Trustee has determined that accrual of any expense to maintain these documents is an unnecessary administrative burden on the estate.

## DISCHARGE OF TRUSTEE OTHER THAN WITH RESPECT TO TRAILING OBLIGATIONS

49.    Pursuant to the terms of the Plan and Litigation Trust Agreement, the Trustee is obligated to liquidate the Trust assets, pursue viable causes of action, make timely distributions and not unduly prolong the duration of the Trust.

50.    As set forth more fully above, the Trustee has fulfilled these obligations.   At present, the Plan has been substantively consummated and all that remains for the Trustee is the

completion of certain post-distribution administrative tasks. As such, the Trustee submits that it is appropriate for the Court to release and discharge the Trustee of his duties and obligations as Trustee of the Augustus Trust other than those limited remaining duties and obligations relating to the wind down of the Trust and the Proposed Order which include reconciling any final distributions, filing final tax returns, and any other administrative tasks that may be necessary (the "Trailing Obligations"). The Trustee shall be released and the Trust shall terminate once the Trailing Obligations have been completed. Until such time as the Trailing Obligations have been completed, the exculpation and indemnification protections provided to the Trustee under the Plan, Confirmation Order and Litigation Trust Agreement shall remain in effect.

### FILING OF A FINAL REPORT

51.     Consistent with the Delaware Local Rules, at least fourteen (14) days prior to the scheduled hearing on this Motion, the Trustee will file the final report (the "Final Report") from the Petition Date through the date hereof pursuant to Local Rule 3022-1(a)(ii), under separate cover. The Trustee will also file a final quarterly operating report through the date of the Final Decree.

### NO PRIOR REQUEST

52.     No previous request for the relief sought in this Motion has been made to this or any other court.

### NOTICE

53.     Notice of this Motion will be provided to the United States Trustee and all creditors who have filed a request for notice under Fed. R. Bankr. P. 2002 and Local Rule 9013-1 and (iii) all other parties entitled to notice under Del. Bankr. LR 3022-1(a)(ii). In light of the nature of the relief requested herein, the Trustee respectfully submits that no other or further notice is required.

- 19 -

## **CONCLUSION**

WHEREFORE, the Trustee respectfully requests that this Court enter an order substantially in the form as the Proposed Order, (a) issuing a final decree closing this Chapter 11 Case, (b) terminating the engagement of the Claims Agent, (c) authorizing the destruction of the Debtor's remaining business records, and (d) for such further relief that the Court deems just and proper.

Dated: July 1, 2026            CHIPMAN BROWN CICERO & COLE, LLP

*/s/ Bryan J. Hall*
Bryan J. Hall (No. 6285)
Hercules Plaza
1313 N. Market Street, Suite 5400
Wilmington, DE 19801
Telephone: (302) 295-0191
Facsimile: (302) 295-0199
Email: hall@chipmanbrown.com

-and-

THOMPSON COBURN LLP
Mark T. Power (admitted *pro hac vice*)

488 Madison Avenue
New York, NY 10022
Telephone: (212) 478-7200
Facsimile:  (212) 478-7400
Email: mpower@thompsoncoburn.com

*Co-Counsel for the Augustus Trustee*